Slip Op. 17-63

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SHIJIAZHUANG GOODMAN TRADING CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> FRESH GARLIC PRODUCERS ASSOCIATION, ET AL., <br><br> Defendant-intervenors. | Before: Timothy C. Stanceu, Chief Judge <br><br> Court No. 14-00101 |

### OPINION

[Sustaining a determination issued in response to court order in an antidumping duty new shipper review]

Dated: May 26, 2017

*Robert T. Hume*, Hume & Associates, LLC, of Taos, NM, for plaintiff Shijiazhuang Goodman Trading Co., Ltd.

*Richard P. Schroeder*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant United States. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Reginald T. Blades, Jr.*, Assistant Director. Of counsel was *Khalil N. Gharbieh*, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

*Michael J. Coursey*, Kelley Drye & Warren LLP, of Washington D.C., for defendant-intervenors Fresh Garlic Producers Association, Vessey and Company, Inc., The Garlic Company, Christopher Ranch, L.L.C., and Valley Garlic. With him on the brief were *John M. Herrmann II* and *Joshua R. Morey*.

Stanceu, Chief Judge: In this action, plaintiff contested a decision by the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department"), to rescind an administrative "new shipper" review ("NSR") of an antidumping duty order on fresh garlic from the People's Republic of China ("China" or the "PRC"). *Fresh Garlic from the People's Republic of China: Final Rescission of Antidumping Duty New Shipper Review of Shijiazhuang Goodman Trading Co., Ltd.*, 79 Fed. Reg. 22,098 (Int'l Trade Admin. Apr. 21, 2014) (*"Rescission"*).

Plaintiff, Shijiazhuang Goodman Trading Co., Ltd. ("Goodman"), a Chinese garlic exporter, requested the new shipper review according to section 751(a)(2)(B) of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1675(a)(2)(B), so that it could obtain an individually-determined antidumping duty margin on its garlic exports to the United States.[1] In a previous opinion, *Shijiazhuang Goodman Trading Co. v. United States*, 40 CIT __, 172 F. Supp. 3d 1363 (2016) ("*Goodman I*"), the court ruled on various grounds that the Department's decision to rescind the review was contrary to law.

Before the court is the determination Commerce issued in response to the court's order in *Goodman I* ("Remand Redetermination"). Under protest, Commerce has reversed its decision to rescind the new shipper review. Commerce has completed the review and assigned Goodman a dumping margin of $0.08 per kilogram. The court sustains the Department's new determination.

## I. BACKGROUND

Background on this case is presented in *Goodman I*, 40 CIT at __, 172 F. Supp. 3d at 1366-68, and is summarized briefly and supplemented herein.

---

[1] Statutory citations herein are to the 2012 edition of the United States Code, and citations to regulations are to the 2014 edition of the Code of Federal Regulations.

**Court No. 14-00101**  Page 3

### A. Administrative Proceedings

In early 2013, Commerce initiated the new shipper review at Goodman's request. *Fresh Garlic from the People's Republic of China: Initiation of Antidumping Duty New Shipper Review; 2011-2012*, 78 Fed. Reg. 88 (Int'l Trade Admin. Jan. 2, 2013) ("*Initiation*"). The review covered the period of November 1, 2011 through October 31, 2012. *Id* at 89.

In the preliminary results of the new shipper review ("Preliminary Results"), Commerce concluded that Goodman met the requirements for a new shipper review and was entitled to an individually-determined antidumping duty margin based on demonstrated independence from the government of the PRC. *Fresh Garlic From the People's Republic of China: Preliminary Results of New Shipper Review of Shijiazhuang Goodman Trading Co., Ltd.*, 78 Fed. Reg. 67,112 (Int'l Trade Admin. Nov. 8, 2013). Departing from its normal practice of expressing weighted-average dumping margins in ad valorem terms, Commerce preliminarily determined a per-unit dumping margin for Goodman, which was $0.44 per kilogram. *Id.* at 67,112. Reversing its position, Commerce issued its rescission of the new shipper review ("Rescission") on April 21, 2014. *Rescission*, 79 Fed. Reg. at 22,098. The result was that Goodman's merchandise was subjected to a cash deposit requirement at the rate Commerce applied to exporters that had not demonstrated independence from the PRC government, which was $4.71 per kilogram. *Id.* at 22,099.

The period of review ("POR") for the requested new shipper review, November 1, 2011 through October 31, 2012, corresponded to the period of review for the eighteenth periodic administrative review of the Order, the final results of which Commerce issued on June 30, 2014, 70 days after the Rescission contested in this case. *Fresh Garlic from the People's Republic of China: Final Results and Partial Rescission of the 18th Antidumping Duty Administrative*

*Review; 2011-2012*, 79 Fed. Reg. 36,721 (Int'l Trade Admin. June 30, 2014) (*"Final Results"*). After stating in the memorandum accompanying the Rescission that "we are considering Goodman's entitlement to a separate rate in that review," Commerce, in the final results of the eighteenth administrative review, rescinded the eighteenth administrative review as to Goodman on the same ground on which it ruled in the Rescission. *Decision Mem. for the Final Results in the Antidumping Duty New Shipper Review of Fresh Garlic from the People's Republic of China: Shijiazhuang Goodman Trading Co., Ltd.*, A-570-831, APR 11-12, at 9 (Int'l Trade Admin. Apr. 3, 2014) (Admin.R.Doc. No. 190), available at http://enforcement.trade.gov/frn/summary/prc/2014-09015-1.pdf (last visited May 22, 2017) (*"Rescission Decision Mem."*); *Final Results*, 79 Fed. Reg. at 36,723.

In the eighteenth review, Commerce retained the PRC-wide rate of $4.71 per kilogram, the rate it continued to apply to Goodman, and determined a rate of $1.82 per kilogram for the respondents in that review that were not individually examined but qualified for a rate separate from the PRC-wide rate. *Final Results*, 79 Fed. Reg. at 36,723. Before this Court, numerous parties, including Goodman, contested the final results of the eighteenth review; that litigation is ongoing. *See, e.g., Fresh Garlic Producers Ass'n v. United States*, 39 CIT __, 121 F. Supp. 3d 1313 (2015).

B. Proceedings before the Court

Goodman brought this action to contest the Rescission on April 21, 2014. Summons, ECF No. 1; Compl., ECF No. 6. The Fresh Garlic Producers Association and its individual members, U.S. garlic producers Christopher Ranch, L.L.C., The Garlic Company, Valley Garlic, and Vessey and Company, Inc. (together, the "defendant-intervenors"), intervened on behalf of defendant. Consent Mot. for Leave to Intervene as of Right (May 21, 2014), ECF No. 8

("Consent Mot. to Intervene"); Order (May 21, 2014), ECF No. 12.  Defendant-intervenors are domestic garlic producers that participated in the new shipper review.  *See* Consent Mot. to Intervene 2.

On August 22, 2014, Goodman moved for judgment on the agency record.  Mot. of Pl. Shijiazhuang Goodman Trading Co., Ltd. for J. on the Agency R. and Mem. in Supp. (Aug. 22, 2014), ECF Nos. 21-22 ("Goodman's Br.").  Defendant and defendant-intervenors opposed Goodman's motion.  Def.'s Mem. in Opp. to Pl.'s Rule 56.2 Mot. for J. upon the Agency R. (Nov. 6, 2014), ECF Nos. 30-31 ("Def.'s Br."); Def.-Intervenors' Response in Opp. to Pl.'s Mot. for J. on the Agency R. (Nov. 6, 2014), ECF Nos. 32-33 ("Def.-Int.'s Br.").  Goodman filed its reply on December 10, 2014.  Pl.'s Reply to the Responses of Def. and Def.-Intervenors to Pl.'s Rule 56.2 Mot. for J. upon the Agency R. (Dec. 10, 2014), ECF Nos. 36-37 ("Goodman's Reply Br.").

The court held oral argument on May 21, 2015, ECF No. 43, and issued its previous opinion and order on March 22, 2016.  In response, Commerce issued the Remand Redetermination on August 22, 2016.  Final Results of Redeterm. Pursuant to Remand (Aug. 22, 2016), ECF Nos. 60-61 ("*Remand Redeterm.*").  Commerce announced, under "respectful protest, that Goodman's sales are *bona fide* and that the company is eligible for a NSR resulting in an individually-determined antidumping duty rate of $0.08/kg, modified and recalculated from the *Preliminary Results*."  *Id.* at 1 (footnote omitted).

Goodman submitted comments on the Remand Redetermination on September 19, 2016.  Comments on Commerce Dept.'s Final Results of Redeterm. Pursuant to Remand (Sept. 19, 2016), ECF No. 64 ("Goodman's Comments").  On September 21, 2016, defendant-intervenors also submitted comments on the Remand Redetermination.

Def.-Intervenors' Comments on Dept.'s Redeterm. Pursuant to Court Order (Sept. 21, 2016), ECF Nos. 65-66 ("Def.-Intervenors' Comments"). Defendant filed a response to the comments on October 21, 2016. Def.'s Resp. to Comments Regarding Remand Results (Oct. 21, 2016), ECF No. 68 ("Def.'s Resp."). Goodman supports the Remand Redetermination; the defendant-intervenors oppose it. *See* Goodman's Comments 1; Def.-Intervenors' Comments 3.

## II.  DISCUSSION

### A.  Jurisdiction and Standard of Review

The court exercises jurisdiction according to section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), under which the court reviews actions contesting the final results of an administrative review of an antidumping duty order brought under section 516A of the Tariff Act of 1930, 19 U.S.C. § 1516a(a)(2)(B)(iii). The court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938).

### B.  The Department's Rescission of the New Shipper Review

In rescinding the new shipper review, Commerce concluded that the sales upon which Goodman sought an individually determined margin were not *bona fide* sales, finding the average unit values ("AUVs") and quantities in those sales, as determined by Commerce from Customs data on imports of garlic from the PRC during the POR, to be "atypical and, thus, commercially unreasonable." *Goodman I*, 40 CIT at __, 172 F. Supp. 3d at 1371 (quoting *Rescission Decision Mem.* 4). Commerce had stated in the memorandum accompanying the Preliminary Results that in determining whether a sale is *bona fide* it "considers, *inter alia*, such

factors as: (1) the timing of the sale; (2) the price and quantity; (3) the expenses arising from the transaction; (4) whether the goods were resold at a profit; and (5) whether the transaction was made on an arm's-length basis." *Decision Mem. for the Preliminary Results of Antidumping Duty New Shipper Review of Fresh Garlic from the People's Republic of China: Shijiazhuang Goodman Trading Co., Ltd.*, A-570-831, ARP 11-12, at 3 (Int'l Trade Admin. Nov. 4, 2013) (Admin.R.Doc. No. 141), available at http://enforcement.trade.gov/frn/summary/prc/2013-26861-1.pdf (last visited May 22, 2017) ("*Prelim. New Shipper Decision Mem.*") (footnote omitted); *see also Bona Fide Nature of the Sales in the Antidumping Duty New Shipper Review of Fresh Garlic from the People's Republic of China (PRC): Shijiazhuang Goodman Trading Co., Ltd.,* A-570-831, ARP 11-12, at 2 (Int'l Trade Admin. Nov. 4, 2013), ECF No. 24-2 ("*Bona Fide Analysis Mem.*"). For the Preliminary Results, Commerce had concluded that each of its five factors supported a finding that the sales were *bona fide*. *Goodman I*, 40 CIT at __, 172 F. Supp. 3d at 1371. In rescinding Goodman's new shipper review, Commerce adhered to its preliminary results with respect to each of its five factors except the "price and quantity" factor, deciding that the four remaining factors did not indicate that Goodman's sales were not *bona fide*. *New Shipper Review of the Antidumping Duty Order on Fresh Garlic from the People's Republic of China: Final Analysis of Shijiazhuang Goodman Trading Co., Ltd.*, A-570-831, ARP 11-12, at 9 (Int'l Trade Admin. Apr. 3, 2014), ECF No. 24-8 (*"Final Analysis Mem."*). As to the one factor upon which it made its decision, Commerce found Goodman's entry prices to be "exceptionally high in comparison to other entries of garlic during the POR" and that its entry quantities were lower than those in most other entries during the POR. *Goodman I*, 40 CIT at __, 172 F. Supp. 3d at 1372 (quoting *Rescission Decision Mem.* 4). In support of its decision to rescind the new shipper review, Commerce also inferred that a person

employed by Goodman during the POR, identified as "Ms. Gao," who previously was employed by another garlic exporter in the PRC, conducted activities on behalf of Goodman related to those sales that were not solely, if at all, in Goodman's interests. *Id.* at 1372-73 (citing *Final Analysis Mem.*). Commerce concluded that "[d]ue to the totality of circumstances, including price, quantity, and concerns regarding the relationship with another garlic exporter located in the PRC, as detailed in the Goodman Final Analysis Memorandum, the Department finds that Goodman's sales are not bona fide." *Rescission*, 79 Fed Reg. at 22,098 (footnote omitted).

### C.  The Court's Opinion and Order in *Goodman I*

In *Goodman I,* the court held that "Commerce has not based its ultimate decision to rescind the new shipper review on a consideration of the record evidence as a whole." *Goodman I*, 40 CIT at __, 172 F. Supp. 3d at 1379. The court noted that the Department's regulations provide that "'[t]he Secretary may rescind a new shipper review' if Commerce concludes that . . . 'there has not been an entry and sale to an unaffiliated customer in the United States of subject merchandise." *Goodman I*, 40 CIT at __, 172 F. Supp. 3d at 1370 (citing 19 C.F.R. § 351.214(f)(2)(i)). The court noted further that "[i]n applying § 351.214(f)(2)(i) in this and other new shipper review proceedings, Commerce has considered whether a reported sale is 'commercially reasonable, and therefore bona fide.'" *Id.* (citing *Prelim. New Shipper Decision Mem.*).

*Goodman I* concluded that "the analysis by which Commerce found that Goodman's prices were aberrational and not commercially reasonable failed to consider all relevant and probative record evidence" and that "[s]ubstantial evidence is not available on this record to support a finding that the quantities of Goodman's sales were, in the Department's words, 'aberrational' and not 'commercially reasonable.'" *Goodman I*, 40 CIT at __, 172 F. Supp. 3d

at 1377. Additionally, the court decided that the Department's inference that "Ms. Gao's activities on behalf of Goodman in making the relevant shipments to the United States . . . were not conducted solely, if at all, in 'Goodman's interests,'" an inference upon which Commerce relied "in concluding that Goodman's sales were not 'commercially reasonable,'" was not based upon "record evidence or a finding based on record evidence." *Goodman I*, 40 CIT at __, 172 F. Supp. 3d at 1377-78. The court instructed Commerce to reconsider its rescission of the new shipper review and base its redetermination on the record as a whole. *Goodman I*, 40 CIT at __, 172 F. Supp. 3d at 1379.

### D.  The Department's Redetermination on Remand

In the Remand Redetermination, "the Department finds that Goodman's sales are *bona fide*." *Remand Redeterm.* 8. Commerce, "upon re-evaluation of the record evidence," found that "Goodman's prices do not appear to be illegitimate" and agreed with the court "that the low quantities are not in and of themselves 'aberrational.'" *Id.* at 3-6. Additionally, regarding the involvement of Ms. Gao, Commerce found that record evidence was "not adequate to support a non *bona fide* finding in light of the lack of evidence of an aberrational price or quantity." *Id*. at 7. The court concludes that substantial evidence supports the Department's determination that Goodman qualifies for a new shipper review. The Department's specific findings as to price, quantity, and the role of Ms. Gao are discussed below.

### 1.  The Prices in Goodman's Sales

Commerce determined that the AUV on the four entries of Goodman's merchandise that were made during the POR was 1.8 times the AUV for all Chinese whole garlic entries during

the POR. *See Remand Redeterm.* 4.[2] Commerce, in rescinding the new shipper review, concluded that the difference between the prices of Goodman's entries and the AUV for all whole garlic entries during the POR "indicates that these entries were not typical of the sales Goodman will make in the future" and that the prices of Goodman's entries were "aberrational" and not "commercially reasonable." *Final Analysis Mem.* 7-8.

The court concluded in *Goodman I* that Commerce "failed to analyze certain record data that were relevant to, and indeed probative of, the issue of whether Goodman's prices were aberrational or commercially unreasonable." *Goodman I*, 40 CIT at __, 172 F. Supp. 3d at 1374-75. The court mentioned, for example, that Commerce did not address "the record data showing the prices at which Goodman purchased the subject garlic from the unrelated Chinese producer," which, the court noted, "are not comparable to the general AUV Commerce obtained from the Customs data." *Id.*, 40 CIT at __, 172 F. Supp. 3d at 1375. The record data showed "that the weighted average unit value for Goodman's purchases of the garlic from the unrelated producer was $2.52/kg., or nearly a dollar per kilogram higher than the AUV for all Chinese whole garlic inputs during the POR" and also showed "a weighted-average mark-up of $0.33/kg. ($2.85-$2.52), or 13%." *Id.*, 40 CIT at __, 172 F. Supp. 3d at 1375 n.9, n.10.

The Remand Redetermination states that "[w]ith respect to the purchase prices of garlic in the Chinese market, we continue to find those prices irrelevant for purposes of our antidumping analysis." *Remand Redeterm.* 4. Commerce explained that it does "not rely on

---

[2] The AUV of Goodman's four entries were $2.67 per kilogram, $2.83 per kilogram, $2.83 per kilogram, and $3.16 per kilogram. *Goodman I*, 40 CIT at __, 172 F. Supp. 3d at 1374 n.8 (citing *New Shipper Review of the Antidumping Duty Order on Fresh Garlic from the People's Republic of China: Final Analysis of Shijiazhuang Goodman Trading Co., Ltd.*, A-570-831, ARP 11-12, at 7 (Int'l Trade Admin. Apr. 3, 2014)). Further, "[t]he AUV for all whole garlic entries during the POR was $1.58/kg." compared to the weighted AUV of Goodman's four entries during the POR which was $2.85 per kilogram. *Id.*

prices within a non-market economy, so Goodman's purchase price in China does not provide a useful point for comparison." *Id.* at 5.  The court disagrees with this reasoning because a price in a sale of garlic between a Chinese producer and an unrelated Chinese exporter, although the sale was made in China, still would be relevant to the issue of whether the exporter's resale price for that same garlic was aberrational or commercially unreasonable when compared to the prices of other garlic exported from China and imported into the United States.  Nevertheless, the issue is moot because Commerce determined that Goodman's sale prices "were not aberrational, regardless of Goodman's purchase prices in the PRC." *Id.* at 11.

The court also concluded that Commerce, when comparing Goodman's prices to a POR-wide AUV for all imports of whole garlic from China, "failed to analyze record data showing that a significant increase in garlic prices occurred during the POR." *Goodman I*, 40 CIT at __, 172 F. Supp. 3d at 1375.  The court observed that the Customs import data showed "that the AUV of garlic imports from China was markedly higher during the last eight months of the period of review than it had been during the first four months of that twelve-month period and that the AUV in the last five months, when Goodman's sales and entries occurred, remained at that higher level." *Id.* (footnote omitted).

In its Remand Redetermination, Commerce stated that "it is not the Department's practice to normally match the entries by month within the POR because we have no information on the corresponding sales dates of the CBP entries, which could vary widely." *Remand Redeterm.* 4.  Nevertheless, Commerce "compared Goodman's prices to the AUV of the last eight months of the POR" and found that the average price of Goodman's sales is "1.4 times higher than the AUV of the last eight months in the POR, as opposed to 1.8 times higher than the AUV for the entire POR." *Id.* (footnote omitted).  Referring to Goodman's sales prices during

**Court No. 14-00101**                                                                                                                                    Page 12

July, August, and September 2012, Commerce concluded that "in accordance with the Court's directive, after examining this limited subset of entries, the Department has determined that Goodman's sales were within the range of many other sales prices, and this supports a finding that the sales are not aberrational." *Id.* (footnote omitted).

Addressing a concern by the court concerning "an apparent anomaly presented by Customs entry data that itself appears to involve aberrational values for garlic," *Goodman I*, 40 CIT at __, 172 F. Supp. 3d at 1376, Commerce found that certain low value sales of a single exporter substantially decreased the AUV in the Customs data. *Remand Redeterm.* 5. In the context of these data, Commerce observed that Goodman's highest-price sale was not substantially higher than its next-highest-price sale and concluded that "when considering Goodman's higher-priced sales along with these lower-priced and otherwise legitimate market transactions, Goodman's prices do not appear to be illegitimate." *Id*. (footnote omitted).

Commerce also addressed the court's observation in *Goodman I*, 40 CIT at __, 172 F. Supp. 3d at 1376, that "Commerce did not address the possibility that its comparison of Goodman's prices with the weighted average unit value from the Customs data could have been affected by price variation due to bulb size." In response, Commerce stated in the Remand Redetermination as follows: "[T]he Department does not have a method of identifying bulb sizes for CBP entries to establish a relationship between size and price, but reason and the evidence available indicate that large bulbs can command higher prices in the market." *Remand Redeterm.* 5. Commerce added that "[s]ome record evidence also suggests that Goodman's garlic bulbs were at the high end of the garlic market, which may account for the higher prices." *Id.* (footnote omitted).

      Although the court, as discussed above, does not agree entirely with the Department's analysis, it concludes that substantial record evidence supports the finding Commerce reached as to the entry prices for Goodman's garlic during the POR. That finding, which Commerce reached after considering record evidence it did not address previously, is that those prices "do not appear to be illegitimate." *Remand Redeterm.* 5 (footnote omitted).

2.  The Quantities in Goodman's Sales

      In deciding to rescind the new shipper review, Commerce relied in part on its finding that the quantities in each of the four entries of Goodman's merchandise were smaller than the average quantity on the entries of garlic from the PRC shown in the Customs import data. As the court stated in *Goodman I*, "Commerce cited the Customs import data on Chinese garlic entries showing that the average quantity on Goodman's entries during the POR was less than half the average quantity for all entries of Chinese garlic during the period of review, which it described as the 'normal entry size.'" *Goodman I*, 40 CIT at __, 172 F. Supp. 3d at 1377. In *Goodman I*, the court held that "[s]ubstantial evidence is not available on this record to support a finding that the quantities of Goodman's sales were, in the Department's words, 'aberrational' and not 'commercially reasonable'" because "[t]he quantities on the four entries, while smaller than the average shown in the Customs import data, cannot be described truthfully as commercially insignificant or exceptional, whether considered individually or collectively." *Id.* (citation omitted). The court stated, further, that "in judging the quantities on the individual entries of Goodman's subject merchandise to be unacceptable because they are less than half of what Commerce considered to be the 'normal entry size,' Commerce unfavorably compared Goodman's quantities with a concept, i.e., 'normal entry size,' that it failed to ground in record evidence." *Id.*

In its Remand Redetermination, Commerce clarified that in using the term "normal entry size," it "was merely commenting on the extent to which Goodman's quantities were below the average entry size of garlic exporters from the PRC." *Remand Redeterm.* 6.  Commerce stated that it "agrees that the low quantities are not in and of themselves 'aberrational,'" adding that "if there were other factors suggesting the absence of *bona fide* sales, then the below-average quantities would be more relevant." *Id.*

### 3.  The Involvement of Ms. Gao

Commerce based its finding that Goodman's sales were not *bona fide* partly on an inference it drew regarding activities of Ms. Gao, who was employed by Goodman during the POR and previously had been employed by another garlic exporter in the PRC, Hebei Golden Bird Trading Co., Ltd. ("Golden Bird").  As described in *Goodman I*, "Commerce stated in the Final Analysis Memorandum that it 'inferred' that a person employed by Goodman during the POR, whom Commerce identified as 'Ms. Gao,' conducted activities on behalf of Goodman 'in making the relevant shipments to the United States . . .' that were not conducted solely, if at all, in 'Goodman's interests.'" *Goodman I*, 40 CIT at __, 172 F. Supp. 3d at 1372 (quoting *Final Analysis Mem.* 8).  "Commerce also expressed in the Decision Memorandum that 'the Department has concerns with regards to the reliability of responses provide [*sic*] by Goodman with regards to Ms. Gao's employment at Golden Bird.'"  *Id.*, 40 CIT at __, 172 F. Supp. 3d at 1377 (quoting *Rescission Decision Mem* 4).

Regarding the Department's inference, the court opined in *Goodman I* that "an inference is not a finding, and this particular inference is vague and conclusory."  *Id.*, 40 CIT at __, 172 F. Supp. 3d at 1378.  The court added that "[a]n agency may draw a reasonable inference so long as it is drawn from record evidence or a finding based on record evidence, but this inference

is drawn from neither." *Id.*  The court also concluded that "[t]he Department's expressed 'concern' about the reliability of Goodman's questionnaire responses is also vague, and Commerce fails to link its concern to specific information Goodman provided during the new shipper review that Commerce deems unreliable or that could be shown to be relevant to the question of whether the prices and quantities in Goodman's sales were aberrational." *Id*.

In its Remand Redetermination, Commerce concluded that "there is no additional evidence on the record that would allow the Department to further develop the inference we stated in the *Final Rescission*." *Remand Redeterm.* 15.  Commerce mentioned "an internal contradiction" in a declaration by Ms. Gao concerning her previous employment but further stated that the "contradiction is all that is certain on this point" and that "[g]iven the Department's revised findings concerning Goodman's sales prices and quantities, we now also revise our inference, finding that the noted discrepancy in Ms. Gao's contradictory declaration is insufficient to support a conclusion that Goodman's sales were not *bona fide*." *Id.* at 15-16.

<u>E.  The Court Does Not Find Merit in Defendant-Intervenors' Objections to the Remand Redetermination</u>

Defendant-intervenors raise two objections to the Remand Redetermination.  Maintaining that "the evidence identified by the Court as detracting from the agency's decision did not require a reversal of the Department's final results," they argue, first, that Commerce again should have found Goodman's sales not to be *bona fide* transactions and, on that basis, again rescinded the new shipper review.  Def.-Intervenors' Comments 3.  Second, they argue in the alternative that the AUV of the highest priced of the three entries of Goodman's garlic "is aberrational and should have been disregarded by the Department in calculating an individual antidumping rate for Goodman." *Id.*

**Court No. 14-00101**                                                                                                    Page 16

      Defendant-intervenors' first argument is largely an attempt to reargue issues the court decided in *Goodman I*. Defendant-intervenors raised this argument in their comments on a draft version of the remand redetermination (which comments they incorporate by reference in their comments to the court), but Commerce rejected the argument upon issuing the Remand Redetermination. *Id.* at 2. They point to their having argued in their comments on the draft that they "explained why the evidence identified by the Court as detracting from the agency's decision did not require a reversal of the Department's final results and why additional record evidence supported the Department continuing to find that Goodman's sales are not *bona fide* transactions that can serve as the basis for an individually-determined antidumping margin." *Id.* This argument sidesteps the question now before the court, which is not whether Commerce on this record permissibly could have reached the outcome defendant-intervenors advocate, i.e., rescission of the new shipper review, but whether substantial evidence supports the decision Commerce actually reached in the Remand Redetermination. Defendant-intervenors fail to make the case that Commerce lacked an evidentiary basis to conclude that the Goodman's sales were *bona fide* and, based on that finding, to complete the new shipper review. As the court discussed above, the record contains substantial evidence to support the findings the Remand Redetermination made "upon re-evaluation of the record evidence" that the prices "do not appear to be illegitimate" and that the quantities in the entries are not "aberrational," *Remand Redeterm.* 3-6, and also the finding that the record evidence as to the activities of Ms. Gao is "not adequate to support a non *bona fide* finding in light of the lack of evidence of an aberrational price or quantity," *id.* at 7.

      On the issue of prices, which was the principal reason Commerce found Goodman's sales not to be *bona fide* in the Rescission, Commerce concluded that the substantially lower

differential of 1.4 between Goodman's prices and the AUV in the Customs data (based on an eight-month base period) when compared to a differential of 1.8 (based on a twelve-month period) "along with the presence of certain low-value sales that substantially decrease the AUV and the possibility that Goodman's bulb sizes were at the high end of the garlic market, lead us to a different conclusion about the *bona fide* nature of Goodman's sales price." *Id.* at 11. Defendant-intervenors maintain that the differential of 1.4 is evidence that Goodman's prices "are unlikely to be predictive of Goodman's future sales prices," Def.-Intervenors' Comments Attach. 1 at 7, but this argument fails to show that Commerce impermissibly found the sales to be *bona fide* based on the record evidence considered on the whole. They also argue that the record did not contain evidence establishing that Goodman's garlic was resold in the United States at a profit, which lack of evidence they attribute to a failure by Goodman and its U.S. customer to make an adequate record. Def.-Intervenors' Comments Attach. 1 at 10-11. They even go so far as to suggest, without a factual basis, that there was a failure on the part of Goodman to cooperate in the proceeding. *Id.* The lack of evidence of resale at a profit, which Commerce did not attribute to a failure of Goodman to cooperate in responding to the Department's requests for information, does not invalidate the Department's finding, based on the evidence the record did contain, that Goodman's sales were *bona fide.*

In summary, the court must reject defendant-intervenors' first argument because the record considered on the whole, including the evidence Commerce did not address originally, contains substantial evidence to support the Department's determination that Goodman qualifies for a new shipper review based on the sales and entries Commerce analyzed in the Remand Redetermination.

Defendant-intervenors' alternative argument that Commerce should have excluded Goodman's highest-priced entry from the calculated margin also rests on the invalid premise that the record evidence required Commerce to take such a step. Commerce considered this argument in the Remand Redetermination and rejected it, noting that the price in the sale at issue was not significantly higher than the next highest-priced sale and did not deviate from the mean as much as "a substantial number of transactions clustered at the low end of the dataset" deviated from the mean. *Remand Redeterm.* 13. This specific evidence, together with the evidence on the record as a whole, supported the Department's finding that this sale, like the other sales Commerce analyzed, was *bona fide*.

### F.  The Court Sustains the Department's Individually-Determined Margin of $0.08 per kilogram for Goodman

After determining that Goodman's sales were *bona fide*, Commerce calculated an individually-determined dumping margin for Goodman of $0.08 per kilogram. *Remand Redeterm.* 1. Commerce addressed comments raised in case briefs and rebuttal briefs during the new shipper review regarding the preliminarily-calculated $0.44-per-kilogram margin and made certain adjustments to the surrogate values, resulting in the $0.08-per-kilogram margin. Goodman supports this determination, and other than their objection that the highest-priced entry should have been excluded, defendant-intervenors raised no objections to the Department's margin calculation, which the court sustains.

### III. CONCLUSION

For the reasons discussed above, the court concludes that substantial evidence on the record supports the Department's determination that Goodman's sales were *bona fide* and that Goodman therefore is eligible for a new shipper review and for an individually-determined dumping margin of $0.08 per kilogram.  Judgment will enter accordingly.

                                                                /s/ Timothy C. Stanceu
                                                                Timothy C. Stanceu
                                                                Chief Judge

Dated:  May 26, 2017
             New York, New York